Is it still morning? Good morning. We'll hear from counsel. Thank you very much. Thank you, Your Honor, and good morning. My name is Tom Gaeta for the appellant Damian Preston. I'd like to reserve two minutes for rebuttal. Two minutes. Go ahead, sir. So at bottom, this case is about Mr. Preston's inability to confront his accuser, here his brother, Leonard Presley, who refused to testify at trial. Despite that refusal, the Commonwealth introduced a prior statement and testimony given by Mr. Presley, both of which inculcated Mr. Preston. Now, at trial, there was no objection to the admission of the prior statement, correct? Yes. So at trial, counsel, referencing the Commonwealth v. Brady case, so it's purely an issue of state procedure, said that he had no objection to Mr. Presley being Bradyized with respect to the prior statement, but felt that Bradyizing Mr. Preston, or Mr. Presley, with respect to the testimony would be inappropriate because Mr. Preston was not able to cross-examine him when that prior testimony was taken at Mr. Presley's trial. So was that a Confrontation Clause objection or a hearsay objection? It was a hearsay objection. It was entirely on the basis of the Pennsylvania Rules of Evidence. It was? Oh. So there are two spots he makes the objection. He makes the objection to Brady on the neck I think the language is pretty clear in those instances that he's hearkening to the Pennsylvania Rule of Evidence. Yes, I think it's very clear from the context of the entire proceeding. In fact, prior to counsel making his objection to the introduction of that testimony, there's several pages of testimony in which Judge Sarmina, the trial court judge, was working with the prosecutors to secure an immunity agreement because of her concern over the Pennsylvania Rules of Evidence and throughout all of this. It wasn't entirely articulate, but I thought he said, I didn't have an opportunity, I would not have an opportunity to cross-examine. I mean, he used the phrase cross-examine. Yes, so the rule of evidence at issue, the Pennsylvania Rule of Evidence It did articulate constitutional ground. It did not articulate a constitutional ground for the objection, but did say I didn't have an opportunity to cross-examine the witness. Yes, I think that's correct. And that's because the underlying Pennsylvania Rule of Evidence does require an opportunity to cross-examine in order to present this evidence, this prior testimony. What do we do with the PCRA court's determination that it was the ineffectiveness of direct appeal counsel not to raise this? As in, he had preserved it in the trial court, but it was the ineffectiveness of direct appeal counsel not to raise it as a confrontation clause issue. Well, so I don't believe the superior court, the PCRA court didn't address ineffectiveness of counsel in any respect. And then the superior court stated that the issue was waived because it could have been raised on direct appeal. And I think that was just a recognition of the fact that it's not cognizable in PCRA without the ineffectiveness of counsel wrapper around the confrontation clause claim. So in that respect, I don't think that it's a finding that's binding on this court, because obviously there was- I'm sorry, you're right. It was the superior court that said that. I think that the superior court previously had held, as it should have, that counsel had failed to object at all to the introduction of the statement. And so there's no question that the procedural default of the statement occurred there. As far as the confrontation clause issue, I don't think it could have been raised on direct appeal because there was no confrontation clause objection at trial. So you believe you're smack dab within Martinez? Yes. Yes, I think we are. I think that we are within Martinez because here we have-it's very clear from the record trial counsel either was not considering or was disregarding the confrontation clause. There was, I think, a fairly obvious confrontation clause problem, particularly at the time that he made the objection. This was prior to any testimony. He objected because Mr. Presley, and I think the quote after getting nudity was he said, well, I still don't want to testify. I still refuse to testify. There was no question going into Mr. Presley's testimony that he had no intention whatsoever of meaningful participation. And I think that when you have a witness who refuses to meaningfully participate in testimony, you cannot have a witness or you cannot have a meaningful opportunity to confront that witness. Well, what is meaningfully participate? The Supreme Court doesn't require that there be meaningful participation. I mean, in fact, Owens says that, you know, why pull it from memory? Full and effective cross-examination. Right. You need an opportunity for effective cross-examination, not cross-examination that is effective in whatever way and to whatever extent the defense may wish. That's Kentucky v. Spencer. Owens has another quote that I'll use later. So I think that Owens actually is instructive on this point, where Owens said that a witness is regarded as a subject of cross-examination when he's placed on the stand under oath and responds willingly to questions. And Owens also recognized that if a witness is asserting privilege, that assertion can render him unavailable for testimony or unavailable for cross-examination. So for your purposes, then, because I think this is important to kind of parse all this out. So for your purposes, you're equating the invocation of no comment with asserting privilege? Well, I think from the perspective of the Confrontation Clause, which is to ensure that a defendant has an opportunity to meaningfully test the evidence pressed against him, there is no meaningful distinction between someone who asserts the Fifth Amendment privilege, someone who, as in, I think it was either United States v. Fiore or the Tenth Circuit case, whose name I am, whose name is escaping me, or indeed in this court, in Thomas v. Kyler, which held that a defendant is who, having been sworn, declines to testify on Fifth Amendment grounds. It's all about declining to testify. Haven't Judge Strawbridge's view that by his being able to pepper him with questions that he would not comment on, he almost got effective cross-examination? Well, I think that Judge Strawbridge could have made the same comment if instead of saying no comment, Mr. Presley had repeatedly said, I assert my Fifth Amendment. From the perspective of Mr. Preston's ability to question Mr. Presley, there's no real distinction. I guess there's ability to question, but no ability to get answers. Exactly. And as the trial court made clear in its instructions to the jury, it's not his questions that constitute evidence. It's the answers of the witness. So while he was able to answer, I'm sorry, was not able to get any answers, was able to ask questions and was able to talk to the jury about the questions that Mr. Presley refused to answer, that's not the same as getting meaningful opportunity to cross-examine Mr. Presley. How about the harmless error aspect of the case? Well, I don't think that the error was harmless here. So obviously we've conceded, and Mr. Preston conceded on the stand, that he took part in an assault. And that assault culminated in a shooting. Preston's testimony really parallels Presley's pretty closely. Well, I think that there is no question that this assault occurred, it occurred together. Most of this case is uncontested. What is contested is who had the gun, who pulled the trigger. But didn't Preston lend credibility to Presley, basically, by testifying? I don't believe so, given that Mr. Preston said specifically that he did not shoot, and he was not the shooter. He lended credibility in Butler's testimony. Presley's, the excerpt is from Presley. Yeah, I think Presley lent credibility to Butler. Butler said that she observed Mr. Preston step back, reach forward, then heard a shot. However, that testimony was itself called into question by the testimony of Memorian Stanfield, who said she wasn't in a position to see that. So when you have all of these conflicting accounts, and the ultimate question of who fired the shot comes down to, do you believe Latoya Butler? Right, but let's get to this. Where is the line as you see it? He responded to questions, some questions on direct. He responded mostly with no comment. You've talked about meaningful cross-examination. I'm not sure that that's exactly, it doesn't matter for the purposes of this question. Where do you see the line being drawn? Suppose he had said, I don't really want to answer that question. And he sprinkled that throughout. Would that mean that you'd say he wasn't, Mr. Preston didn't have the opportunity for cross-examination? I assume for the purposes of your hypothetical you're referring to cross-examination? Yes. I suppose direct doesn't really matter. Go ahead. I agree with you that that sort of line drawing would be very difficult. And thankfully this case doesn't require the court to take on that sort of line drawing because there was a complete refusal to meaningfully participate in cross-examination. I think that it would have to be a case-by-case basis to determine how meaningful, it would depend on what questions he refused to answer, if they're biographical versus if they're questions about the veracity of the prior statement. And so I think that it would be an incredibly thorny issue to set a right-line rule where someone participates in part and refuses to participate in part on cross-examination. The very problem in the case was the trial judge's decision to allow testimony from a prior proceeding to be presented to the jury. Is that fairly accurate? Yes. I think at bottom that's that. To which there was no objection on constitutional grounds. No, none whatsoever. And, in fact, there was no objection at all on any grounds to the introduction of his prior police statement, which was video-recorded. So the point was allowing the jury to consider a statement and prior testimony that current counsel did not have a chance to cross-examine on, or at least Preston didn't have a chance to cross-examine on. Exactly. So what we're looking at is trial counsel's failure to object on constitutional grounds and then appellate counsel's failure also to bring it up? Well, I mean, our position is that appellate counsel was not effective or failing to bring it up. The issue would have been waived on direct appeal. I see. So then it is post-conviction relief counsel. Yeah. Post-conviction relief counsel recognized the underlying constitutional problem, the Confrontation Clause issue, but presented it in PCRA in a format that was not cognizable. So had competent counsel been appointed to represent Mr. Preston Is that the error that we're looking at? Well, I mean, I think there's three errors in this case. The first error is the trial court's admission of testimony that could have conflicted with the Confrontation Clause. The second is trial counsel's failure to make a constitutional objection to that admission. And the third failure is PCRA counsel who recognized the underlying Confrontation Clause problem to present the issue in a way where he could get relief for his client. Now, competent counsel would have noted, you know, hey, trial counsel didn't make this objection. This is ineffective assistance. So let's consider trial counsel's failure and the underlying Confrontation Clause claim. That's what brings you in, Martino. Yeah. I mean, I think what brings us here is a serial failure of attorneys to competently represent Mr. Preston. And so we're trying to unwind that clock. Let me ask you this. If we determine that Preston's Confrontation Clause claim has merit in order to grant him relief, we have to conclude that his trial counsel was constitutionally ineffective for failing to raise the issue to make that argument. Assuming that the Confrontation Claim is meritorious, does it necessarily follow that trial counsel here was objectively unreasonable under Strickland for failing to make the objection? Yes. I note that I'm out of time. So, yes, I think that it is clear that counsel was ineffective. There is no reasonable strategy to both object on the basis of the Pennsylvania Rules of Evidence and concede to one piece of evidence without even addressing the Confrontation Clause issue. There's just no reasonable strategy. If he thought that this evidence should come in for some reason, why object at all to any of it, considering that the testimony and statement were essentially the same? What about the argument that since Presley gave some answers, that it doesn't really invoke the Confrontation Clause claim? So I think the problem there is that the answers Presley gave were on direct. The only answers he gave other than no comment on cross-examination When asked if his family was in the room, he responded, yes. And when asked, will you continue to answer my questions with no comment, he responded, yes. That's the extent of his non-no comment answers on cross-examination. Trial counsel did make a Confrontation Clause objection, right? No. Trial counsel made an objection based on the Pennsylvania Rules of Evidence. He didn't say the Pennsylvania Rules of Evidence. He referred to the fact that the person at the trial didn't have the same interest. The person that cross-examined didn't have a similarity of interest. And so that would hearken to the Pennsylvania Rules. He didn't cite the Pennsylvania Rules. He said, I don't have an opportunity to cross-examine. Well, he made that comment in the context of saying, I object under Commonwealth v. Brady to the introduction of this evidence. And Commonwealth v. Brady is a case that says, under the Pennsylvania Rules of Evidence, this can be admitted if either you have an opinion or cross-examine correctly. Where is that? I don't recall seeing that. Maybe he gave it to us on the phone. I didn't see that reference. I have a reference for you. Okay. Page 104 and then 108. You tell me this is wrong. Do you have an informant? I do. So it's J598. Is that what you're looking at? J598. Yes. He said, Judge, as far as Brady is concerned, I have no problem with him being Brady-ized as far as the statement. That's the police statement. That's the statement. Yes. I'm talking about the trial testimony. Yes. But so he said, as far as Brady is concerned, I have no problem with the statement, but I do have a problem with the testimony. And then the comments that he made beyond that about his ability to cross-examine at the prior proceeding and his ability to cross-examine at the current proceeding are both things addressed in Brady under the auspices of the Pennsylvania Rules of Evidence. Thank you very much. Don't leave yet. Oh, okay. Well, I think the issue that we're talking about might be referenced in the page 108, and maybe you can comment and see from your perspective whether it does harken back to the Pennsylvania Rule. The quote is, Judge, I object. Let me see now. What's the reference point? It was more of the no comments. And on page 108.7, it's 599. 599. JA 599, page 108, line 7. Judge, I object because to continue to let him just sit there and say no comment in front of the jury is just prejudicial to my client. I mean, you know, at some point we have to cut it. If that's all he's going to do, then it's the same as if he stood in front of this jury and said, I plead the Fifth. So the question there is, does that invoke, obliquely maybe, the Confrontation Clause, or is that still a reference to the Pennsylvania Rules of Evidence? I think in the context of this entire exchange, it is a reference to the Pennsylvania Rules of Evidence. The same issue of the invocation of the Fifth Amendment is addressed in the Pennsylvania Rules of Evidence in the Commonwealth v. Brady. I don't believe that he was intending to raise the Confrontation Clause there. However, the court did not address it in terms of the Confrontation Clause, and so I would submit that even if that could be construed as a Confrontation Clause objection, when the court declined to address it in those terms, reasonable counsel would have reiterated, this is also a Confrontation Clause problem. I apologize, Your Honor. No, it's okay. Was it crystal clear at the time, in this context, that is, you do have the person on the stand? It's not just introducing their prior testimony and they're not there, but they're on the stand. Was it crystal clear, even before he testified, that this was a Confrontation Clause situation? Yes, I think absolutely. This is post-Owens. This was heard in 2003. I don't have the date in front of me. You would think that the person's on the stand, and before you question them, and they may answer the questions, you say Confrontation Clause, but they're there on the stand. So is that really the same as if their statement were just to be introduced and they're not even there? Had it been applied in this context? Had the Confrontation Clause been applied in this specific context? I'm not entirely sure of the question, but here it's not simply a matter of he's available physically, but he has made clear at this time that he will not answer questions. So he might be on the stand, but he has informed the judge, he has informed counsel. I refuse to answer questions, despite this grant of immunity. Okay. May it please the Court, Max Kaufman for the Commonwealth. Now, there's probably the most straightforward reason relief should be denied in this case, is that any hypothetical Confrontation Clause error in this case was harmless. The trial court instructed the jury to view Presley's testimony and his prior testimony with disfavor, because it came from a corrupt and polluted source. That certainly blunted the prejudicial impact of these statements by Presley.  There is other evidence in this case overwhelmingly proving Preston's guilt. I've witnessed Latoya Butler repeat. But the problem was that Presley directly implicated the guy who was on trial in the shooting. Well, certainly, Your Honor, but even setting that aside, the other evidence was so overwhelming that any prejudicial impact of that particular testimony was insignificant by comparison, especially when the court is instructing the jury, that's a polluted source, jurors. The idea that defense counsel didn't have an opportunity to cross-examine that witness and that witness's prior statements were presented to the jury as if they were true. Well, I wouldn't say they did have an opportunity, but that's a separate question. Arguably, you should assume for the purposes of writing your opinion that there was a Confrontation Clause error. It's the common position that any speech error was absolutely harmless. But what if you believe that the testimony is correct, that Ms. Butler hadn't turned the corner? Well, first of all. I mean, she was friendly with Presley, right? They were sitting on the porch together, and he said to her, you know, I'll be right back, et cetera, et cetera. Just for the record, Presley was the brother. Right. You meant the decedent. Yeah, I'm sorry. The decedent was a friend. A couple of things there, Your Honor. Butler actually could have seen the incident, it's clear from her testimony, just from the corner without walking physically up Wayne Avenue. But let's take Butler's testimony out of the case. Preston himself admitting to beating this victim, putting him against the hood of the car, and in his version of events, standing by while his brother shoots him to death. He's guilty of third-degree murder as an accomplice. So even if you take out Butler, too, you still have overwhelming evidence of guilt here. Preston incriminated himself on the stand, Your Honors, and his purported defense evidence only added to the evidence of his guilt. They likewise testify to a fight out there on the hood of a car and then a shooting. So your point is that the Sixth Amendment violation of something that was run is harmless error? Absolutely, Your Honor. Because the evidence was sufficient as it was, even though it was not subject to cross-exam for the jury to find beyond a reasonable doubt. More than sufficient, Your Honor. Overwhelming. All right. Why don't you address the confrontation clause issue itself? Well, the case law seems to indicate that there has to be an opportunity for cross-examination, not effective cross-examination. And we would submit that there was that opportunity here. As evidence, and we submit that defense counsel pulled through a couple of cases that actually worked. A full and effective cross-examination. The law is declared as testifying and subject to full and effective cross-examination. Right, but the cross-examination was in fact effective, but subject to full and effective cross-examination. Yeah, but how can you be subject to full and effective cross-examination if it wasn't effective? Well, if there's an opportunity for effective cross-examination. What do you mean that the judge didn't cut him off? Compare the questioning by the prosecutor here. It goes on for over 100 pages. He got a lot of no comments also, but he stuck to it. And he drew out answers from Mr. Presley. Defense counsel cuts off his cross after less than six pages of the transcript. Okay, so the fact that. . . Let's stop there for just a moment. I got to argue, just one second. So Owen says he needs to respond willingly. Your adversary points out correctly that in the record there are only two questions on cross-examination that Presley responds willingly. Mom's in the. . . I think Mom, the parents are there, the sister's there. What's the third? Are you going to answer every one of my questions with no comment? Okay, a substantive answer. Charlie, fourth comment. Okay. So how is no comment, whether it's five pages or 100 pages, responding willingly? And if Owen's isn't that, then how is it. . . I would submit that that responding willingly is a misquote from Owen's there. The Owen's court was discussing what is subject to cross-examination for purposes of the federal rules of evidence, not the Confrontation Clause. The Confrontation Clause just talks about an opportunity for effective cross-examination, not willingly responding. As a matter of fact, Owen's goes on, as a number of other cases do, to talk about when you have evasion by a witness that doesn't vitiate the Confrontation Clause. Yeah, perfectly, perfectly. That's absolutely accurate. But engaging in evasion is different than not responding. Well, I would submit that no comment is more analogous to evasion, as evidenced by defense counsel's closing argument, where he was able to take. . . Defense counsel is not without weapons to attack this witness. He took advantage of those no comment statements in his closing. DePayne Presley is self-interested. All he cares about is his own state court appeal. He doesn't even care at all that his little brothers are on trial for his life here. So defense counsel is not left without adequate weapons here. And the paucity of substantive answers on Cross, I would submit, is not because there was a Confrontation Clause violation, but because he stopped going, essentially. And perhaps that's a separate claim, but that's not a Confrontation Clause problem. So the prosecutor went on for 100 pages. If he went on for 50 pages and got no comment for 50 pages, would the argument remain that he didn't try hard enough? I mean, at some point, you just say, this is what I'm going to get. And what I'm trying to grapple with is, does no comment constitute a response that's in line or consonant with the Constitution in this analysis? I'm having a hard time getting there. It seems to me it's more akin to taking the fifth. To me, it's more akin to evasion, particularly when viewed in context of the multiple substantive answers that he gave on Direct. Why are we looking at Direct? Well, I mean, the case is precedent. I understand why. Look at those questions, too, because if he's not saying anything in Direct or Cross, there really is a complete refusal to testify. Here, there wasn't. And there's an indication, because of all those answers that he's giving on Direct, that there is an opportunity there on Cross for him to say more. If only trial counsel is willing to probe, to push in the manner that the prosecutor did. So I think that's why the Direct examination is relevant. And I think the case law supports that. Now, we may have touched on this if we did. Forgive me. But when we were talking about the Confrontation Clause and the particular quotes from the record, I take it it's your position that this does constitute a timely Confrontation Clause objection? It is, Your Honor. Counsel specifically objected that I'm being denied my right to cross-examine. But that right exists under the Brady, under the hearsay rule. It's not necessarily a Confrontation Clause. Because the rule, the state rule, you probably have dealt with it more than I have. I can't speak for my colleagues. But the state rule specifically talks about cross-examination in the same context that he raises it here, which, given the fact of the judge's response, not sort of encompassing or alluding to the Confrontation Clause, would lead one to believe we're just talking about the Pennsylvania Rules of Evidence. Well, I think we really know that he raised it for purposes of state law, because when it comes to the Superior Court of Peace Area Appeal, what do they say? They say it's waived. But they don't say it's waived because it wasn't raised at trial. They say it's waived because it wasn't raised on appeal. But they may not have. How could you raise it on appeal unless it was raised at trial? They may not be right. They may not have been correct. And he raises it in the context of binding on habeas. He acts as though if he had had the same interest, if counsel in the original trial had had the same interest that he had, then it would be okay. And that's clearly relating to the Pennsylvania Rule. It's not a Confrontation Clause rationale. Well, that piece of it. But then he has this other objection, a separate language from trial. Counsel is saying if he's going to continue to say no comment, I'm being denied my right to cross-examine this witness. To me, that implicates a Sixth Amendment Confrontation Clause claim. So all you do there is you knock out Martinez as to that. Correct? I mean, based on De Vila, you don't get to it because the error was on direct appeal. Well, that's right, Your Honor. And it certainly nullifies any claim of trial counsel ineffectiveness. How could trial counsel be ineffective for declining to raise a claim? But then you still have the police statement where there clearly was no objection at trial. Yes, that's it. So that would be Martinez. But then again, if you let in the other trial testimony as no problem, it's hard to say that the police statement was harmful. You get my drift? Yes, Your Honor. Especially since I'm drifting in your direction. Exactly, Your Honor. A lot of these maybe more difficult and nuanced questions can be put to one side. This Court can certainly assume without deciding that there was a Confrontation Clause error here. We certainly are not conceding that there was one. But we really do want to emphasize that in our view, in light of all the other evidence here, including Preston's guilt either as a shooter or as an accomplice here, that any theoretical Confrontation Clause error was harmless. It's the right to confront under the Constitution and failure to confront a witness is harmless error? The U.S. Supreme Court has said that that claim, like most claims, is absolutely subject to harmless error review. Absolutely. Repeatedly. One second. I don't want you to take the quiet to be you're done. Why is it this case where we should at least be in virtual equipoises to the harmlessness of error? Because it is so overwhelming whether, I mean, what does Butler, Butler adds that he's a trigger man. But the way Pennsylvania law is vis-a-vis accomplice liability, the actual identity of the shooter is irrelevant to Preston's guilt of third degree murder. It's clearly, let's assume hypothetically that Preston is the trigger person, it's clearly aiding him with malicious intent. He's joining in the beating, he's pinning that victim against the hood of the car. Without his assistance, without him beating there and holding him against the car, Kareem Williams isn't directly in front of Mr. Presley, again, assuming Mr. Presley is the shooter, for Mr. Presley to shoot him to death. So that would be my answer as to why, in our view, it's not even a close question. Is that the option that the jury had in terms of finding guilt? Absolutely, your honor. They were instructed on accomplice liability. As a matter of fact, the jury went out to deliberate and then came back and was re-instructed on accomplice liability and conspiratorial liability. For what level, what degree of homicide? Well, we charged all three. So on the table were first degree murder, second degree murder, and third degree murder. And Mr. Preston was convicted of third degree murder, as was his father, Mr. Presley, in the prior trial. So if we were drafting a rule, if I've gone over this territory, but just for line drawing, basically, other than the invocation of the fifth, if there's any response that really satisfies, from your perspective, the confrontation clause, because it allows counsel to work with it in whatever way they choose. Is that a mischaracterization? That's fair, your honor. A complete refusal, and I'm not sure it would matter necessarily what specifically the witness is saying, but if there was absolutely zero substantive answers anywhere on the record, I think Preston would have an awfully good argument. But that's not this record. We'll just wait one second. Okay. Thank you, your honors. Thank you, your honors. I'll be very brief. So first, I think that my colleague is incorrect about whether or not Mr. Preston would have been liable or an accomplice to third degree murder. Under Pennsylvania law, in order to be an accomplice, you have to share the mens rea with the person who actually committed the act. Now, Mr. Preston testified that he participated in an assault. Now, that assault requires a different level of mens rea than the malice required for third degree murder. So even though he could have had some sort of criminal liability, it wouldn't have been to third degree murder. So there is still prejudice notwithstanding Mr. Preston's acquiescence to his guilt in an assault. And then just to address another point, I think that my colleague might have inadvertently misrepresented what happened on direct examination. The prosecutor didn't go on for hundreds of pages asking questions of Mr. Presley. He went on for hundreds of pages because he read into the record Mr. Presley's prior testimony at his own trial. There really weren't that many questions offered to Mr. Presley on direct examination, nor were his answers to those questions, when they weren't no comment, particularly illuminating. I don't think this is a case where you have somebody who's willingly participated on direct exam and then clams up on cross, even if it were. To me, that seems more offensive to the Confrontation Clause than somebody who refuses to participate in any way. The point of the Confrontation Clause is to limit the government's ability to present evidence against the defendant to which the defendant cannot respond. Now, if they're able to present even more evidence on direct examination, that is a more serious Confrontation Clause problem than if you have somebody who's refusing to participate meaningfully at all on direct examination. The only other point I wanted to make was, counsel made reference to the fact that in closing, trial counsel had some weapons and was able to make some arguments. I don't see why, in the face of a Confrontation Clause violation, trial counsel should throw up his hands and refuse to make any arguments whatsoever, nor do I think that the fact that trial counsel tried to do what he could, despite this Confrontation Clause violation, which I frankly don't think trial counsel recognized, should ameliorate the fact that the Sixth Amendment was violated by the admission of this testimony. Thank you very much. Thank you. Thank you, counsel, for a well-argued case.